# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

WILLIAM WAYMAN

    Plaintiff,

vs.

3M COMPANY, 3M
OCCUPATIONAL SAFETY LLC,
AEARO HOLDING LLC, AEARO
INTERMEDIATE LLC, AEARO
LLC, and AEARO
TECHNOLOGIES LLC,

    Defendants.

Case No. 7:20-cv-149-MCR-GRJ

## PLAINTIFF WILLIAM WAYMAN'S
## PROPOSED JURY INSTRUCTIONS

I will now instruct you on the law applicable to the claims brought by Mr.

William Wayman. Again, Colorado law applies to his case.

# EPA REGULATIONS

Throughout trial you have heard reference to certain Environmental Protection Agency (EPA) regulations. EPA regulations apply to the testing and labeling of all hearing protection devices sold commercially or to the military, including the CAEv2. These regulations provide that certain information must be included with each and every hearing protection device sold, whether packaged individually or in bulk, and require:

> The value of sound attenuation to be used in the calculation of the Noise Reduction Rating must be determined according to the "Method for the Measurement of Real-Ear Protection of Hearing Protectors and Physical Attenuation of Earmuffs." This standard is proven as the American National Standards Institute Standard (ANSI STD) S3.19-1974. 40 CFR § 211.206-1(a).

> All hearing protective devices . . . must be labeled according to this subpart, and must comply with the Labeled Values of mean attenuation. A manufacturer must take into account both product variability and test-to-test variability when labeling his devices . . . . 40 CFR § 211.211.

> The information to appear on the primary label must . . . state the value of the Noise Reduction Rating (NRR) in decibels for that model hearing protector. The value stated on the label must be no greater than the NRR value determined by using the [ANSI S3.19-1974] computation method . . . . 40 CFR § 211.204-1(b)(1).

> The following minimum supporting information must accompany the device in a manner that insures its availability to the prospective user. . . The mean attenuation and standard deviation values obtained for each test frequency . . . and the NRR calculated from those values. . . . Instructions as to the proper insertion or placement of the device. 40 CFR § 211.204-4(e).

1

Mr. Wayman claims 3M violated these EPA regulations by, for example:

1. Failing to label the CAEv2 with an accurate Noise Reduction Rating (NRR), on either the individual or bulk package;

2. Failing to test the CAEv2 in conformance with ANSI S3.19; and

3. Failing to provide instructions as to the proper insertion or placement of the CAEv2, on either the individual or bulk package.

I will instruct you as to when and for what purpose you may consider 3M's alleged violation of these regulations.


Authority: Colorado Pattern Civil Jury Instruction 9:14; *France v. Trans States Airlines, LLC*, 2019 WL 6130803, at *6 (D. Colo. Nov. 19, 2019) ("Colorado courts have recognized violations of federal regulations as a proper basis for a negligence *per se* claim." (citing *Hageman v. TSI, Inc.*, 786 P.2d 452, 454 (Colo. App. 1989)); *Estes*, Dkt. 182 at 13; *Adkins*, Dkt. 113 at 24-25.

## INSTRUCTION 1
## STRICT LIABILITY–DESIGN DEFECT

Mr. Wayman asserts a claim of strict liability based on a defect in 3M's design of the CAEv2.

DEFECTIVE, UNREASONABLY DANGEROUS — DEFINED

A product is unreasonably dangerous because of a defect in its design if it creates a risk of harm to persons or property that is not outweighed by the benefits to be achieved from such design.

A product is defective in its design, even if it is manufactured and performs exactly as intended, if any aspect of its design makes the product unreasonably dangerous.

Authority: Colorado Pattern Civil Jury Instruction 14:3

PRESUMPTIONS — NONCOMPLIANCE WITH GOVERNMENTAL STANDARDS

"Presumptions" are legal rules based on experience or public policy. They are established in the law to assist the jury in ascertaining the truth.

In this case, if you find that at the time 3M sold the CAEv2, (1) the product did not comply with any applicable regulation of the EPA, and (2) that the lack of

compliance was a cause of the Mr. Wayman's claimed injuries, then the law presumes that the CAEv2 was defective.

You must consider this presumption together with all the other evidence in the case in deciding whether the CAEv2 was defective.

<u>Authority</u>: Colorado Pattern Civil Jury Instruction 14:5

<u>ELEMENTS</u>

To prevail on his design defect claim, Mr. Wayman must prove by a preponderance of the evidence that:

1. The CAEv2 was defective in its design and, because of its defective design, the CAEv2 was unreasonably dangerous to a person who might reasonably be expected to use or be affected by the CAEv2;

2. Mr. Wayman was injured; and

3. The defect in the CAEv2 was a cause of the Mr. Wayman's injuries.

If you find that any one or more of these statements has not been proven, then your verdict on this claim must be for 3M.

On the other hand, if you find that all of these statements have been proven, then your verdict on this claim must be for Mr. Wayman.

<u>Authority</u>: Colorado Pattern Civil Jury Instruction 14:1; *Koehn v. R.D. Werner Co.*, 809 P.2d 1045, 1050 (Colo. App. 1990) ("[A]n elemental instruction should not be so cast as to require proof of elements that are admitted or uncontroverted.").

**INSTRUCTION 2**
**STRICT LIABILITY–FAILURE TO WARN AND/OR INSTRUCT**

Mr. Wayman also asserts a claim of strict liability based on failure to warn and/or instruct, *i.e.* that he was injured by 3M's failure to provide adequate product warnings and/or instructions with the CAEv2.

WARNINGS AND INSTRUCTIONS

A product not otherwise defective in its design becomes defective and unreasonably dangerous if adequate warnings or instructions for use are not provided. To be adequate, the warnings or instructions for use must inform the ordinary user of any specific risk of harm that may be involved in any intended or reasonably expected use or any failure to properly follow instructions when using the product for any intended or reasonably expected use.

However, if a specific risk of harm would be apparent to an ordinary user from the product itself, a warning of or instruction concerning that specific risk of harm is not required.

Authority: Colorado Pattern Civil Jury Instruction 14:4

6

PRESUMPTIONS — NONCOMPLIANCE WITH GOVERNMENTAL
STANDARDS

"Presumptions" are legal rules based on experience or public policy. They are
established in the law to assist the jury in ascertaining the truth.

In this case, if you find that at the time 3M sold the CAEv2, (1) the product
did not comply with any applicable regulation of the EPA, and (2) that the lack of
compliance was a cause of the Mr. Wayman's claimed injuries, then the law
presumes that the CAEv2 was defective.

You must consider this presumption together with all the other evidence in
the case in deciding whether the CAEv2 was defective due to a lack of warnings.

Authority: Colorado Pattern Civil Jury Instruction 14:5

ELEMENTS

To prevail on his strict liability failure to warn and/or instruct claim, Mr.
Wayman must prove by a preponderance of the evidence that:

1. The CAEv2 was defective because adequate warnings or instructions for
use were not provided, and, because of the lack of adequate warnings or instructions
for use, the CAEv2 was unreasonably dangerous to a person who might reasonably
be expected to use or be affected by the CAEv2;

2. Mr. Wayman was injured; and

7

3. The absence of adequate warnings or instructions for use was a cause of Mr. Wayman's injuries.

If you find that any one or more of these statements has not been proven, then your verdict on this claim must be for 3M.

On the other hand, if you find that all of these statements have been proven, then your verdict on this claim must be for Mr. Wayman.

Authority: Colorado Pattern Civil Jury Instruction 14:1; *Koehn v. R.D. Werner Co.*, 809 P.2d 1045, 1050 (Colo. App. 1990) ("[A]n elemental instruction should not be so cast as to require proof of elements that are admitted or uncontroverted.").

**INSTRUCTION 3**
**NEGLIGENCE**

Mr. Wayman also asserts that 3M was negligent in designing the CAEv2 and warning about the CAEv2's dangers, meaning it failed to exercise reasonable care.

NEGLIGENCE – DEFINED

Negligence means a failure to do an act which a reasonably careful person would do, or the doing of an act which a reasonably careful person would not do, under the same or similar circumstances to protect oneself or others from injury.

Authority: Colorado Pattern Civil Jury Instruction 9:6

REASONABLE CARE

Reasonable care is that degree of care which a reasonably careful person would use under the same or similar circumstances.

Authority: Colorado Pattern Civil Jury Instruction 9:8

MANUFACTURER'S DUTY TO WARN

If a manufacturer of a product knows or in the exercise of reasonable care should know that (1) the use of the product may be harmful or injurious to a user, and (2) that risk of harm or injury is not obvious to a reasonable user, then the manufacturer must use reasonable care to warn the user of the risk of harm or injury

9

if a reasonably careful person would under the same or similar circumstances. The failure to do so is negligence.

<u>Authority</u>: Colorado Pattern Civil Jury Instruction 14:19

## PRESUMPTIONS — NONCOMPLIANCE WITH GOVERNMENTAL STANDARDS

"Presumptions" are legal rules based on experience or public policy. They are established in the law to assist the jury in ascertaining the truth.

In this case, if you find that at the time 3M sold the CAEv2, (1) the product did not comply with any applicable regulation of the EPA, and (2) that the lack of compliance was a cause of the Mr. Wayman's claimed injuries, then the law presumes that the CAEv2 was negligent.

You must consider this presumption together with all the other evidence in the case in deciding whether 3M was negligent.

<u>Authority</u>: Colorado Pattern Civil Jury Instruction 14:5

## ELEMENTS OF LIABILITY

To recover on his claim of negligence, Mr. Wayman must prove all of the following have by a preponderance of the evidence:

1. 3M was negligent by failing to exercise reasonable care to prevent the CAEv2 from creating an unreasonable risk of harm to the person or property of one who might reasonably be expected to use the CAEv2 while it was being used in the manner 3M might have reasonably expected;

2. Mr. Wayman was one of those persons 3M should reasonably have expected to use the CAEv2; and

3. Mr. Wayman had injuries that were caused by 3M's negligence, while the CAEv2 was being used in a manner 3M should reasonably have expected.

If you find that any one or more of these statements has not been proven, then your verdict on this claim must be for 3M.

On the other hand, if you find that all of these statements have been proven, then your verdict on this claim must be for Mr. Wayman.

Authority: Colorado Pattern Civil Jury Instruction 14:17

# INSTRUCTION 4
# NEGLIGENCE PER SE

Mr. Wayman also asserts that 3M was negligent per se because 3M violated EPA regulations.

## NEGLIGENCE PER SE — VIOLATION OF STATUTE OR ORDINANCE

Mr. Wayman contends that 3M violated certain laws. Specifically, he contends that 3M violated certain Environmental Protection Agency (EPA) regulations that apply to the testing and labeling of all hearing protection devices sold commercially or to the military, including the CAEv2. These regulations provide that certain information must be included with each and every device sold, whether packaged individually or in bulk, and require:

> The value of sound attenuation to be used in the calculation of the Noise Reduction Rating must be determined according to the "Method for the Measurement of Real-Ear Protection of Hearing Protectors and Physical Attenuation of Earmuffs." This standard is proven as the American National Standards Institute Standard (ANSI STD) S3.19-1974. 40 CFR § 211.206-1(a).

> All hearing protective devices . . . must be labeled according to this subpart, and must comply with the Labeled Values of mean attenuation. A manufacturer must take into account both product variability and test-to-test variability when labeling his devices . . . . 40 CFR § 211.211.

> The information to appear on the primary label must . . . state the value of the Noise Reduction Rating (NRR) in decibels for that model hearing protector. The value stated on the label must be no greater than the NRR value determined by using the [ANSI S3.19-1974] computation method . . . . 40 CFR § 211.204-1(b)(1).

> The following minimum supporting information must accompany the device in a manner that insures its availability to the prospective user. . . Instructions as to the proper insertion or placement of the device. 40 CFR § 211.204-4(e).

Mr. Wayman claims 3M violated these EPA regulations by, for example:

1. Failing to label the CAEv2 with an accurate Noise Reduction Rating (NRR), on either the individual or bulk package;

2. Failing to test the CAEv2 in conformance with ANSI S3.19; and

3. Failing to provide instructions as to the proper insertion or placement of the CAEv2, on either the individual or bulk package.

A violation of these regulations constitutes negligence. It is your duty to decide whether or not such a violation took place. Such violation, if proven, is called negligence per se, which means negligence as a matter of law.

To recover damages for this claim, Mr. Wayman must prove by a preponderance of the evidence that the negligence per se of 3M was a cause of his injuries.

Authority: Colorado Pattern Civil Jury Instruction 9:14; *France v. Trans States Airlines, LLC*, 2019 WL 6130803, at *6 (D. Colo. Nov. 19, 2019) ("Colorado courts have recognized violations of federal regulations as a proper basis for a negligence

*per se* claim." (citing *Hageman v. TSI, Inc.*, 786 P.2d 452, 454 (Colo. App. 1989));
*Estes*, Dkt. 182 at 13; *Adkins*, Dkt. 113 at 24-25.

## INSTRUCTION 5
## STRICT LIABILITY – MISREPRESENTATION

Mr. Wayman also asserts that 3M is strictly liable for his injuries because it misrepresented material facts about the CAEv2's character or quality.

<u>MISREPRESENTATION OF MATERIAL FACT — DEFINED</u>

A misrepresentation of a material fact concerning the character or quality of a product is:

1. Any oral or written words, conduct, or combination of words and conduct that create an untrue or mistaken impression in the mind of another about the character or quality of a product; and

2. The untrue or mistaken impression is of a fact that would be important to a purchaser or user in determining his or her course of action.

<u>Authority</u>: Colorado Pattern Civil Jury Instruction 14:23

<u>REASONABLE RELIANCE — DEFINED</u>

A person relies on a misrepresentation if that person takes action that he or she otherwise would not take or decides not to take action that he or she would otherwise take because he or she believes the misrepresented information is true.

A person's reliance on a misrepresentation is reasonable if that person believes the information to be true and a reasonable person with the same

15

intelligence, education and experience would also have believed it to be true under the same or similar circumstances.

<u>Authority</u>: Colorado Pattern Civil Jury Instruction 14:23

<u>ELEMENTS OF LIABILITY</u>

To recover on his claim of misrepresentation of a product, Mr. Wayman must prove all of the following have by a preponderance of the evidence:

1. 3M misrepresented a fact concerning the character or quality of the CAEv2 that would be material to potential purchasers or users of the product;

2. The misrepresentation was made to potential purchasers or users as members of the public at large;

3. As a purchaser or user, the U.S. Army or Mr. Wayman reasonably relied on the misrepresentation;

4. Mr. Wayman was a person who would reasonably be expected to use the CAEv2; and

5. Mr. Wayman had injuries caused by the reasonable reliance of the U.S. Army or Mr. Wayman on the misrepresentation.

If you find that any one or more of these statements has not been proven, then your verdict on this claim must be for 3M.

On the other hand, if you find that all of these statements have been proven, then your verdict on this claim must be for Mr. Wayman.

Authority: Colorado Pattern Civil Jury Instruction 14:22; Restatement (Second) of Torts § 402B (1965).

# INSTRUCTION 6
# NEGLIGENT MISREPRESENTATION

Mr. Wayman asserts that 3M made negligent misrepresentations regarding the CAEv2.

## NEGLIGENCE – DEFINED

Again, negligence means a failure to do an act which a reasonably careful person would do, or the doing of an act which a reasonably careful person would not do, under the same or similar circumstances to protect oneself or others from injury.

Authority: Colorado Pattern Civil Jury Instruction 9:6

## ELEMENTS OF LIABILITY

For Mr. Wayman to prevail on his negligent misrepresentation claim, he must prove by a preponderance of the evidence that:

1. 3M negligently gave false information to the U.S. Army or to Mr. Wayman;

2. Mr. Wayman relied upon such information;

3. This reliance was a cause of injuries to Mr. Wayman.

If you find that any one or more of these statements has not been proven, then your verdict on this claim must be for 3M.

On the other hand, if you find that all of these statements have been proven, then your verdict on this claim must be for Mr. Wayman.

<u>Authority</u>: Colorado Pattern Civil Jury Instruction 9:3.

**INSTRUCTION 7**
**FRAUDULENT MISREPRESENTATION**

Mr. Wayman alleges two claims based on fraud – (1) fraudulent misrepresentation and (2) fraudulent concealment

Mr. Wayman asserts he was injured because 3M made a fraudulent misrepresentation in connection with the CAEv2.

ELEMENTS OF LIABILITY

To recover on his claim for fraudulent misrepresentation claim, Mr. Wayman must prove by a preponderance of the evidence that:

1. 3M made a false representation of a past or present fact;

2. The fact was material;

3. At the time the representation was made, 3M:

    (a) knew the representation was false; or

    (b) was aware that it did not know whether the representation was true or false;

4. 3M made the representation with the intent that U.S. Army, servicemembers, and/or Mr. Wayman would rely on the representation;

5. Mr. Wayman relied on the representation;

6. Mr. Wayman's reliance was justified; and

7. This reliance caused injuries to Mr. Wayman.

If you find that any one or more of these statements has not been proven, then your verdict on this claim must be for 3M.

On the other hand, if you find that all of these statements have been proven, then your verdict on this claim must be for Mr. Wayman.

<u>Authority</u>: Colorado Pattern Civil Jury Instruction 19:1.

FALSE REPRESENTATION — DEFINED

A false representation is any oral or written words, conduct, or combination of words and conduct that creates an untrue or misleading impression in the mind of another.

<u>Authority</u>: Colorado Pattern Civil Jury Instruction 19:3.

MATERIAL FACT — DEFINED

A fact is material if a reasonable person under the circumstances would regard it as important in deciding what to do.

A fact may also be material even though a reasonable person might not regard it as important, if the person stating it knows that the person receiving the information would regard it as important in deciding what to do.

21

Authority: Colorado Pattern Civil Jury Instruction 19:4.

RELIANCE — DEFINED

Reliance on the claimed representation exists if Mr. Wayman believed the representation was true, and based on that representation:

1. Took action that otherwise would not have been taken; or

2. Decided not to take action that otherwise would have been taken.

Authority: Colorado Pattern Civil Jury Instruction 19:7.

JUSTIFIABLE RELIANCE ON FALSE REPRESENTATION — DEFINED

A person is justified in assuming that a representation is true if a person of the same or similar intelligence, education, or experience would rely on that representation.

Authority: Colorado Pattern Civil Jury Instruction 19:8.

JUSTIFIABLE RELIANCE — NO GENERAL DUTY TO INVESTIGATE

A person's reliance is justified even though he did not make an investigation that would have revealed the facts unless:

1. He knew specific facts that would have caused a person of the same or similar intelligence, education or experience to be suspicious and investigate; and

2. He had a reasonable opportunity to investigate.

<u>Authority</u>: Colorado Pattern Civil Jury Instruction 19:10.

## INSTRUCTION 8
## FRAUDULENT CONCEALMENT

Mr. Wayman also claims that 3M fraudulently concealed at least one material fact concerning the CAEv2.

NONDISCLOSURE — DUTY TO DISCLOSE

3M had a duty to disclose material facts if it knew about them and if:

1. 3M stated some facts, but not all material facts, knowing that they would create a false impression in the mind of the U.S. Army or Mr. Wayman; or

2. 3M knew that by its own unclear or deceptive words or conduct that it created a false impression of the actual facts in the mind of the U.S. Army or Mr. Wayman; or

3. 3M knew that U.S. Army or Mr. Wayman were not in a position to discover the facts.

Authority: Colorado Pattern Civil Jury Instruction 19:5.

ELEMENTS OF LIABILITY

In order for Mr. Wayman to prevail on this claim, he must prove by a preponderance of the evidence that:

1. 3M concealed a past or present fact or failed to disclose a past or present fact which it had a duty to disclose;

2. The fact was material;

3. 3M intended to create a false impression of the actual facts in the mind of the U.S. Army or Mr. Wayman;

4. 3M intended that the Army or Mr. Wayman take a course of action that might not have been taken if they knew the actual facts;

5. Mr. Wayman used the CAEv2 relying on the assumption that the concealed or undisclosed fact did not exist or was different from what it actually was;

6. Mr. Wayman's reliance was justified; and

7. This reliance caused injuries to Mr. Wayman.


If you find that any one or more of these statements has not been proven, then your verdict on this claim must be for 3M.


On the other hand, if you find that all of these statements have been proven, then your verdict on this claim must be for Mr. Wayman.

Authority: Colorado Pattern Civil Jury Instruction 19:2.


MATERIAL FACT — DEFINED

A fact is material if a reasonable person under the circumstances would regard it as important in deciding what to do.

A fact may also be material even though a reasonable person might not regard it as important, if the person concealing it knows that the person receiving the information would regard it as important in deciding what to do.

<u>Authority</u>: Colorado Pattern Civil Jury Instruction 19:4.


<u>CONCEALMENT — DEFINED</u>

The defendant, 3M, concealed a fact that it knew, if, by conduct, or by written or oral words, or by a combination of conduct and words, it created a false impression of the actual fact in the mind of the U.S. Army or Mr. Wayman:

1. By covering up the truth or

2. By preventing U.S. Army or Mr. Wayman from discovering the actual fact.

<u>Authority</u>: Colorado Pattern Civil Jury Instruction 19:6

<u>JUSTIFIABLE RELIANCE — NONDISCLOSURE OR CONCEALMENT — DEFINED</u>

When dealing with another party, a person is justified in assuming that party will not intentionally fail to disclose a past or present material fact which the other person knows and has a duty to disclose or conceal a material fact.

However, a person is not justified in relying on this assumption when someone of the same or similar intelligence, education, or experience would not rely on it

Authority: Colorado Pattern Civil Jury Instruction 19:9.

JUSTIFIABLE RELIANCE — NO GENERAL DUTY TO INVESTIGATE

Reliance is justified even though there was no investigation that would have revealed the facts unless:

1. He knew specific facts that would have caused a person of the same or similar intelligence, education or experience to be suspicious and investigate; and

2. He had a reasonable opportunity to investigate.


Authority: Colorado Pattern Civil Jury Instruction 19:10.

## INSTRUCTION 9
## DECEPTIVE TRADE PRACTICES

Mr. Wayman also claims that 3M violated the Colorado Consumer Protection Act by engaging in deceptive trade practices.

DECEPTIVE TRADE PRACTICES — DEFINED

3M engaged in a deceptive trade practice if, in the course of its business, 3M:

1. Either knowingly or recklessly made a false representation as to the characteristics of the CAEv2;

2. Represented that the CAEv2 is of a particular standard, quality, or grade knowing that it is of another; or

3. Failed to disclose material information concerning the CAEv2 which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction.

Authority: Colorado Pattern Civil Jury Instruction 29.2; Colo. Rev. Stat. Ann. § 6-1-105 (e), (g), (u)

28

FALSE REPRESENTATION/MISREPRESENTATION — DEFINED

A "misrepresentation" or "false representation" is a false statement that induces the person to whom it is made to act or to refrain from acting or has the capacity to deceive the recipient even if it did not.

Authority: Colorado Pattern Civil Jury Instruction 29.3

ELEMENTS OF LIABILITY

To recover on this claim, Mr. Wayman must prove by a preponderance of the evidence that:

1. 3M engaged in a deceptive trade practice;

2. The deceptive trade practice occurred in the course of 3M's business;

3. The deceptive trade practice significantly impacted the public as actual or potential consumers of the CAEv2;

4. The U.S. Army or Mr. Wayman was an actual or potential consumer of the CAEv2; and

5. The deceptive trade practice caused actual damages or losses to Mr. Wayman.

If you find that any one or more of these statements has not been proven, then your verdict on this claim must be for 3M.

On the other hand, if you find that all of these statements have been proven, then your verdict on this claim must be for Mr. Wayman.

<u>Authority</u>: Colorado Pattern Civil Jury Instruction 29.1

## <u>SIGNIFICANT IMPACT ON THE PUBLIC — DEFINED</u>

In determining whether the challenged trade practices significantly impacted the public as actual or potential consumers of the CAEv2, you shall consider all of the following:

1. The number of consumers directly affected by the challenged trade practices;

2. The relative sophistication of the consumers directly affected by the challenged trade practices;

3. The bargaining power of the consumers directly affected by the challenged trade practices;

4. Evidence that the challenged trade practices have previously impacted other consumers; and

5. Evidence that the challenged trade practices have a significant potential to impact other consumers in the future.

<u>Authority</u>: Colorado Pattern Civil Jury Instruction 29.4

**INSTRUCTION 10**
**CAUSATION**

The word "cause" as used in these instructions means an act or failure to act that in natural and probable sequence produced the claimed injury. It is a cause without which the claimed injury would not have happened.

If more than one act or failure to act contributed to the claimed injury, then each act or failure to act may have been a cause of the injury. A cause does not have to be the only cause or the last or nearest cause. It is enough if the act or failure to act joins in a natural and probable way with some other act or failure to act to cause some or all of the claimed injury.

(One's conduct is not a cause of another's injuries, however, if, in order to bring about such injuries, it was necessary that his or her conduct combine or join with an intervening cause that also contributed to cause the injuries. An intervening cause is a cause that would not have been reasonably foreseen by a reasonably careful person under the same or similar circumstances.)[1]

Authority: Colorado Pattern Civil Jury Instruction 9:20.

---

[1] Plaintiff objects to 3M's affirmative defense that the U.S. Army's actions were a superseding cause of Mr. Wayman's injuries as a matter of law. Plaintiff reserves the right to contest the propriety of an instruction on this defense as a matter of law and based on the sufficiency of the evidence elicited at trial. To the extent a superseding-causation instructions are warranted, Plaintiff proposes these.

## AFFIRMATIVE DEFENSES

3M has raised affirmative defenses, which you must consider if you find any of Mr. Wayman's claims proven. More specifically, 3M asserts that the statute of limitations bars relief to Mr. Wayman on all claims; that certain actions of the U.S. Army were an unforeseen intervening cause of Mr. Wayman's injuries; and that fault should be apportioned between 3M, Mr. Wayman, and the United States Army to lessen or eliminate 3M's liability.

An affirmative defense applies when a claim is proven but other facts are found that defeat a finding of liability or lessen a party's damages. You must consider each affirmative defense separately. Although a defendant is not required to disprove the claim in order for the affirmative defense to apply, to prevail on any specific affirmative defense, the defendant—in this case, 3M—must prove the affirmative defense by a preponderance of the evidence.

**INSTRUCTION 11**
**AFFIRMATIVE DEFENSE: STATUTE OF LIMITATIONS**

3M asserts the statute of limitations as an affirmative defense. A lawsuit must be filed within a specified period of time after the claim accrues, and if not filed within that time, the claims are barred by the statute of limitations and no recovery is allowed. However, the limitations period does not begin to run until a plaintiff discovers both the injury and its cause.

So, regarding Mr. Wayman's claims, if you find that 3M has proven by a preponderance of the evidence that on or before June 19, 2017, Mr. Wayman discovered or in the exercise of reasonable diligence should have discovered both (1) the harm and (2) the cause of that harm, then you should find that Mr. Wayman's claims are barred by the statute of limitations.  Otherwise, you should find the defense is not proven, and his claims are not barred by the statute of limitations.

Authority: C.R.S. § 13-80-106 (statute of limitations) § 13-80-108(1) (accrual of claim); *see, e.g.*, *Adkins*, Dkt. 113 at 32.

## INSTRUCTION 12
## AFFIRMATIVE DEFENSE: INTERVENING CAUSE[2]

3M asserts as an affirmative defense that it is not responsible for Mr. Wayman's injuries because a later act or event was a superseding cause of the harm. More specifically, 3M contends that the United States Army's failure to fit the CAEv2 and/or failure to train Mr. Wayman on its proper use was the sole cause of his injuries.

If you find that Mr. Wayman has proven his claim(s) but that the sole cause of the injuries was a later independent intervening act of the United States Army that was not reasonably foreseeable, then 3M's original act or omission is superseded and was not the legal cause of the injuries.

If, however, you find that Mr. Wayman has proven his claim(s) and that, in the exercise of ordinary care, 3M should reasonably have anticipated the later independent intervening act of the United States Army, then that act does not supersede 3M's original act or omission, and you may find that 3M's act or omission was a cause of Mr. Wayman's injuries.

It is not necessary that the sequence of events or the particular resultant injuries be foreseeable. It is only necessary that the resultant injuries fall within the

---

[2] Plaintiff objects to 3M's affirmative defense that the U.S. Army's actions were a superseding cause of Mr. Wayman's injuries. *See supra* note 1.

general field of danger which 3M should reasonably have anticipated. If so, then 3M

has not proven this defense.

# INSTRUCTION 13[3]
## AFFIRMATIVE DEFENSE:
## COMPARATIVE FAULT OF PLAINTIFF[4]

A form of comparative fault is the negligence, if any, of the plaintiff. 3M asserts as an affirmative defense that the negligence of Mr. Wayman was the cause of Mr. Wayman's injuries. Specifically, 3M alleges that Mr. Wayman negligently used the CAEv2.

---

[3] Plaintiff reserves the right to contest the propriety of a comparative fault instruction as a matter of law and based on the sufficiency of the evidence elicited at trial. To the extent instructions are warranted, Plaintiff proposes these.  To the extent comparative fault as to Mr. Wayman, but not the U.S. Army, remains, Plaintiff would propose Colorado Pattern Civil Jury Instruction 14:29.

[4] During the joint pretrial stipulation process, defense counsel withdrew the affirmative defense of product misuse. In the event Defendants attempt to reverse course and assert this defense at trial, Plaintiff reserves the right to contest the propriety of such an instruction.  To the extent an instruction is warranted, Plaintiff proposes the following modification of Colorado Pattern Civil Jury Instruction 14:27:

3M asserts as an affirmative defense that Mr. Wayman misused the CAEv2. 3M is not legally responsible for injuries caused by the CAEv2 if 3M proves by a preponderance of the evidence:
1. The CAEv2 was used in a manner or for a purpose other than that which was intended;
2. The unintended use could not reasonably have been expected by 3M; and
3. The unintended use, rather than a defect, if any, in the CAEv2 caused Mr. Wayman's claimed injuries.
If you find that all of these three statements have been proven, then your verdict must be for 3M.
On the other hand, if you find that any of these three statements has not been proven, you may still consider whether Mr. Wayman's use of the product constitutes comparative fault, as that term is defined in these instructions.

NEGLIGENCE – DEFINED

Comparative negligence means a failure to do an act which a reasonably careful person would do, or the doing of an act which a reasonably careful person would not do, under the same or similar circumstances to protect oneself from bodily injury.

Authority: Colorado Pattern Civil Jury Instruction 9.6.

REASONABLE CARE

Reasonable care is that degree of care which a reasonably careful person would use under the same or similar circumstances.

Authority: Colorado Pattern Civil Jury Instruction 9:8

AFFIRMATIVE DEFENSE — COMPARATIVE NEGLIGENCE OF THE PLAINTIFF

To find Mr. Wayman at fault, 3M must prove all of the following by a preponderance of the evidence:

1. Mr. Wayman failed to do something that a reasonably careful person would do, or did something that a reasonably careful person would not do, under the same or similar circumstances to protect himself from the defect in the CAEv2; and

2. The conduct by Mr. Wayman was a cause of Mr. Wayman's claimed injuries.

If you find that 3M has proven both propositions, you will be instructed on the verdict form to determine the percentage of fault attributable to Mr. Wayman's negligence.

Otherwise, you should find for Mr. Wayman on this defense.

Authority: Colorado Pattern Civil Jury Instruction 9:23; Colorado Pattern Civil Jury Instruction 14:29; *Adkins*, Dkt. 113 at 33-34.

**INSTRUCTION 14**[5]
**AFFIRMATIVE DEFENSE:**
**COMPARATIVE FAULT OF NONPARTY**

3M also alleges that Mr. Wayman's injuries resulted in part from the negligence of a non-party, the United States Army.  Specifically, 3M alleges that the United States Army negligently failed to fit and/or train Mr. Wayman on the use of the CAEv2.

NEGLIGENCE – DEFINED

As just discussed, negligence means a failure to exercise reasonable care. Reasonable care is that degree of care which a reasonably careful person would use under the same or similar circumstances.

Authority: Colorado Pattern Civil Jury Instruction 9.6; Colorado Pattern Civil Jury Instruction 9:8

AFFIRMATIVE DEFENSE — COMPARATIVE NEGLIGENCE

To find the United States Army at fault, 3M must prove by a preponderance of the evidence that:

---

[5] *See supra* note 4.

1. The U.S. Army acted, or failed to act, in one of the ways claimed by 3M and that in so acting or failing to act, the Army was negligent; and

2. The Army's negligence was a cause of Mr. Wayman's injuries.

If you find that 3M has proven both propositions, you will be instructed on the verdict form to determine the percentage of fault attributable to the Army's negligence.

Otherwise, you should find for Mr. Wayman on this defense.


Authority: Colorado Pattern Civil Jury Instruction 9:23; Colorado Pattern Civil Jury Instruction 9:24; Colorado Pattern Civil Jury Instruction 14:29; *Adkins*, Dkt. 113 at 35.

In rendering your verdict on damages, if you find that Mr. Wayman's injury was caused in any part by the fault of either Mr. Wayman himself or the United States Army, in addition to 3M's fault, you must determine from the evidence what percentage of total fault-using 100% to represent the total fault-was attributable to Mr. Wayman, to the United States Army, and to 3M. The percentages attributed may be 0%, 100% or any percentage in between so long as the total equals 100%. In allocating fault, if you believe that Mr. Wayman is entitled to recover and further find that he is to some degree responsible for his own injury or damages, you should not make any reduction in damages because of the negligence, if any, of Mr. Wayman. Similarly, if you believe that Mr. Wayman is entitled to recover and

further find that the damages he sustained were caused by the United States Army, which is not a party, you must consider its fault, but in determining the total amount of damages, you should not make any reduction in damages because of the negligence, if any, of the United States Army. The court in entering judgment will take into account your allocation of fault among all persons or entities who you find were negligent and contributed to Mr. Wayman's damages.

Authority: Colorado Pattern Civil Jury Instruction 14:30; *Adkins*, Dkt. 113 at 36.

# INSTRUCTION 15
# DAMAGES


## PERSONAL INJURIES — ADULTS

Mr. Wayman has the burden of proving, by a preponderance of the evidence, the nature and extent of his damages. If you find in favor of Mr. Wayman you must determine the total dollar amount of Mr. Wayman's damages.

In determining such damages, you shall consider the following:

1. Any noneconomic losses or injuries which Mr. Wayman has had to the present time or which Mr. Wayman will probably have in the future, including: physical and mental pain and suffering, inconvenience, emotional stress, and impairment of the quality of life.

2. Any physical impairment. In considering damages in this category, you shall not include damages again for losses or injuries already determined under either numbered paragraph 1 above.

Authority: Colorado Pattern Civil Jury Instruction 6:1.

## PERSONAL INJURIES — NON-REDUCTION OF DAMAGES — "THIN SKULL" DOCTRINE

In determining the amount of Mr. Wayman's actual damages, you cannot reduce the amount of or refuse to award any such damages because of any physical

42

frailties or mental condition of Mr. Wayman that may have made him more susceptible to injury, disability, or impairment than an average or normal person.

Authority: Colorado Pattern Civil Jury Instruction 6:7.

DETERMINING LIFE EXPECTANCY — MORTALITY TABLE

At the beginning of this trial Mr. Wayman had a life expectancy of 33 more years (79 years old). This expectancy is taken from the United States social security mortality table. This table is not conclusive but may be considered together with other evidence relating to the plaintiff's health, habits, and occupation.

Authority: Colorado Pattern Civil Jury Instruction 5:5.

UNCERTAINTY AS TO AMOUNT OF DAMAGES

Difficulty or uncertainty in determining the precise amount of any damages does not prevent you from deciding an amount. You should use your best judgment based on the evidence.

Authority: Colorado Pattern Civil Jury Instruction 5:6.

**INSTRUCTION 16**
**AFFIRMATIVE DEFENSE: MITIGATION**[6]

AFFIRMATIVE DEFENSE — FAILURE TO MITIGATE

If you find that Mr. Wayman, has had actual damages, then you must consider whether 3M, has proven its affirmative defense of Mr. Wayman's failure to mitigate or minimize damages.

The plaintiff has the duty to take reasonable steps under the circumstances to mitigate or minimize his damages. Damages, if any, caused by plaintiff's failure to take such reasonable steps cannot be awarded to the plaintiff.

This affirmative defense is proven if you find all of the following have been proven by a preponderance of the evidence:

1. Mr. Wayman failed to seek such medical attention for his claimed injuries as a reasonable person would have sought under the same or similar circumstances;

2. Mr. Wayman had increased injuries because he did not seek such medical attention for his claimed auditory injuries as a reasonable person would have sought under the same or similar circumstances.

---

[6] Plaintiff reserves the right to contest the propriety of a mitigation instruction based on the sufficiency of the evidence elicited at trial. To the extent instructions are warranted, Plaintiff proposes these.

If you find that any one or more of these propositions has not been proven by a preponderance of the evidence, then you shall make no deduction from Mr. Wayman's damages.

On the other hand, if you find that all of these propositions have been proven by a preponderance of the evidence, then you must determine the amount of damages caused by the Mr. Wayman's failure to take such reasonable steps. This amount must not be included in your award of damages.

<u>Authority</u>: Colorado Pattern Civil Jury Instruction 5:2.

**INSTRUCTION 17**
**BAD FAITH CONDUCT (TREBLE DAMAGES)**

If you find in favor of Mr. Wayman and award him actual damages on his claim of deceptive trade practices, then you must consider whether Mr. Wayman has proven by clear and convincing evidence that the defendant engaged in bad faith conduct.

"Bad faith conduct" means fraudulent, willful, knowing, or intentional conduct that causes injuries.

Authority: Colorado Pattern Civil Jury Instruction 29:6

46

## INSTRUCTION 18
## PUNITIVE DAMAGES

<u>EXEMPLARY OR PUNITIVE DAMAGES</u>

If you find in favor Mr. Wayman on one or more of his claims then you shall consider whether Mr. Wayman should recover punitive damages against 3M. If you find beyond a reasonable doubt that 3M acted in a fraudulent, malicious, or willful and wanton manner, in causing Mr. Wayman's injuries you shall determine the amount of punitive damages, if any, that Mr. Wayman should recover.

Punitive damages, if awarded, are to punish the defendant and to serve as an example to others.

<u>Authority</u>: Colorado Pattern Civil Jury Instruction 5:4.

<u>WILLFUL AND WANTON CONDUCT OR WILLFUL AND RECKLESS DISREGARD — DEFINED</u>

"Willful and wanton conduct" means an act or omission purposefully committed by a person who must have realized that the conduct was dangerous, and which conduct was done heedlessly and recklessly, either without regard to the consequences, or without regard to the rights and safety of others, particularly the plaintiff.

<u>Authority</u>: Colorado Pattern Civil Jury Instruction 9:30.

47