UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br><br>*Wayman*, 7:20cv149 | Case No. 3:19-md-02885-MCR-GRJ<br><br>Judge M. Casey Rodgers<br>Magistrate Judge Gary R. Jones |

### DEFENDANTS' POST-TRIAL BRIEF ON COLORADO'S STATUTORY CAPS AND THE IMPACT OF TREBLE DAMAGES ON THE JUDGMENT

The Court asked the parties to brief the impact of Colorado's statutory caps on noneconomic and punitive damages and the interplay between punitive damages and treble damages under the Colorado Consumer Protection Act ("CCPA"), Colo. Rev. Stat. § 6-1-113. Given the jury's verdict, the total amount of the judgment should be $16,404,030.[1]

**I.     Colorado law caps the award of compensatory damages at $5,468,101.**

By statute, Colorado limits awards "in civil actions for noneconomic losses or injuries" other than awards for "physical impairment or disfigurement." Colo. Rev. Stat. § 13-21-102.5. The limit has been found constitutional under Colorado law.

---

[1] For the limited purposes of this brief only, Defendants do not address—and intend to preserve—any arguments relating to the jury's findings and damages awards, as well as all post-judgment arguments. Defendants will address the propriety of the jury's verdict following entry of the judgment.

1

*See Scharrel v. Wal-Mart Stores, Inc.*, 949 P.2d 89, 95-96 (Colo. Ct. App. 1997). Under the statute, the cap is periodically adjusted for inflation by the Secretary of State. *See* Colo. Rev. Stat. § 13-21-102.5(3)(c)(I). The current damages cap for causes of action accruing between 2008 and 2019 is $468,010.00. *See Pisano v. Manning*, 2022 WL 480895, at *3 n.2 (Colo. Ct. App. Feb. 17, 2022); *see also* https://www.sos.state.co.us/pubs/info_center/files/damages_new.pdf.

Here, the jury awarded Mr. Wayman $5 million for "physical impairment," which is not subject to the statutory cap, but $10 million for all other noneconomic damages—"physical and mental pain and suffering, inconvenience, emotional stress, and impairment of the quality of life"—an award that *is* subject to the cap. Dkt. 185. So, the total award of compensatory damages after applying the cap is $5,468,010.[2]

---

[2] While the Court did not request briefing on the issue at this stage, Plaintiff may argue that Colorado law permits an award of prejudgment interest on this amount. *See* Colo. Rev. Stat. § 13-21-101. The award of prejudgment interest generally runs from the date the action accrued. *See id.*; *see also Jones v. Cox*, 828 P.2d 218, 223 (Colo. 1992) ("a cause of action accrues on the date that both the physical injury and its cause were known or should have been known"). Mr. Wayman did not ask the jury to determine the date the cause of action accrued. Regardless, Mr. Wayman's counsel successfully argued in defeating Defendants' statute of limitations defense that his cause of action accrued "no earlier" than 2019, so he cannot now claim an earlier date. *See* Trial Tr. 1/26/2002 at p. 443; *see also* Trial Tr. 1/19/2022 at 249:4-6 ("**Q.** Sir, did you make your connection between the Combat Arms and hearing loss and tinnitus in 2019? **A.** Yes, thereabouts."). Without further evidence documenting a specific date that his cause of action accrued, the best evidence is the census form he submitted on October 30, 2019. Trial Exhibit D-WAYMAN-226 (not admitted).

Mr. Wayman may argue that this Court should apply an exception that permits an award for noneconomic damages not related to physical impairment or disability of up to $936,030.00—double the capped amount—if "the court finds justification by clear and convincing evidence therefor," § 13-21-102.5(3)(a); *see also* https://www.sos.state.co.us/pubs/info_center/files/damages_new.pdf. Mr. Wayman may argue that the cap should be doubled because the size of the jury's award for these other noneconomic damages, compared to the current cap, provides "clear and convincing evidence" for doubling it or that the jury's award itself was supported by "clear and convincing evidence." Not so.

A Colorado appellate court addressed a very similar issue just yesterday. *See Pisano*, 2022 WL 480895. In *Pisano*, the court affirmed a trial court order denying a request to exceed the statutory cap, agreeing with the defendant that "an award in excess of the statutory cap necessarily represents an exception to the standard limit" that would be available in a "typical" case. *Id*. at *4.

First, the *Pisano* court rejected the suggestion that the trial court's focus should be on the size of the jury's award. *See id*. at *6 ("we are not aware of any case that stands for the proposition that a trial court must exceed the statutory cap if it determines that the jury's noneconomic damages award was supported by clear and convincing evidence"). To the contrary, the *Pisano* court noted that "to grant an exception to the cap merely because the jury awarded noneconomic damages,

3

even on strong evidence, 'would essentially circumvent the basic intent of' section 13-21-102.5(3)(a)." *Id*. (quoting *Wallbank v. Rothenberg*, 140 P.3d 177, 181 (Colo. Ct. App. 2006)). Thus, to justify exceeding the cap, "[i]t is not sufficient that the jury valued Pisano's noneconomic injuries at more than three times the statutory limit" because "[i]n every case where the court must decide whether to apply a statutory cap, the jury's verdict has exceeded the limit." *Id*. at *7.

Second, the *Pisano* court agreed that the trial court properly considered whether "exceptional circumstances" existed that would justify exceeding the cap. *Id*. at *5. As the court of appeals noted, Colorado "courts have consistently relied on a case's exceptional circumstances to justify the decision to exceed the cap." *Id*. at *5. The *Pisano* court cited *Mower v. Century I Chevrolet, Inc.* for the proposition that "case law interpreting section 13-21-102.5(3)(a) 'appears to merely examine the nature and extent of the non-economic injuries.'" *Pisano*, 2022 WL 480895, at *5 (*quoting Mower*, 2006 WL 2729265, at *22 (D. Colo. June 16, 2006) (unpublished opinion)).

The *Pisano* court also assembled for comparison a host of Colorado cases in which courts found clear and convincing support for exceeding the cap, all of which involved catastrophic injuries. *See Id*. (Citing cases in which, among other things, "the teenaged plaintiff was rendered a tetraplegic," a case involving "profound,

4

severe, and life-altering" injuries, and one where the plaintiff "was likely going to end up in a wheelchair").

Whatever can be said of Mr. Wayman's claims of tinnitus, his "physical and mental pain and suffering, inconvenience, emotional stress, and impairment of the quality of life" do not fall in the same categories as those cases. Dkt. 185. As with the plaintiff's injuries in *Pisano*—which the trial court there held did not qualify as "exceptional circumstances" to depart from the legislatively-imposed cap—Mr. Wayman "continued to excel at a high-level job," he has not been placed by his doctors on any "physical restrictions" and he is "able to take care of [himself] and [his] family." *Pisano,* 2022 WL 480895 at *7. *See also Watson v. Dillon Cos*., 2013 U.S. Dist. LEXIS 122595, at *14-15 (Dist. Colo. Aug. 28, 2013) (finding no "exceptional circumstances" that would warrant exceeding the cap because, while the court is "sympathetic" to the plaintiff, "the evidence indicates that he is able to function independently, exercise with moderation, and work part-time"). *See* Trial Tr. 1/26/2022 at 82:3-84:2 (Mr. Wayman's boss explaining that he does not know of Mr. Wayman's hearing loss because it does not affect Mr. Wayman's job); *Id.* at 88:25-89:11 (Mr. Wayman's boss explaining that Mr. Wayman's auditory injuries do not affect his job performance and that he is a "great employee"); *Id.* at 79:15-80:6 (Mr. Wayman's primary care physician stating that he has no record of Mr. Wayman complaining of tinnitus or hearing difficulty, and never referred him to an

ENT or audiologist); *see also* Trial Tr. 1/20/2022 at 233:16-25 (Dr. Lustig testifying that Mr. Wayman performed well on speech tests).

Importantly, the jury also awarded him $5 million for "physical impairment," which more than compensates him for any noneconomic losses caused by his tinnitus. In short, there is nothing in Mr. Wayman's case that would justify making his case an "exception to the standard limit" for noneconomic damages under Colorado law—much less an exception proven by "clear and convincing evidence." *Pisano*, 2022 WL 480895 at *4.[3]

## II. <u>Mr. Wayman's punitive damages award is capped.</u>

The Colorado legislature has also limited punitive (or "exemplary") damages to "an amount which is equal to the amount of the actual damages awarded to the injured party." Colo. Rev. Stat. § 13-21-102. This cap applies to the actual damages awarded *after* the imposition of the statutory cap on noneconomic damages. *See Lira v. Davis,* 832 P.2d 240, 245 (Colo. 1992) (holding that "exemplary damages are limited to damages recovered in accordance with an order for judgment, *or to the reduced compensatory amount*") (emphasis added); *see also Watson*, 2013 U.S. Dist. LEXIS 122595, at *19 (applying cap on punitive damages after applying cap on

---

[3] Even assuming *arguendo* that the Court found "clear and convincing evidence" to depart from the standard cap, his noneconomic damages would still be limited to $936,030.00, for a total compensatory damages award of $5,936,030.00.

6

noneconomic damages).  The 1:1 ratio is determined after the imposition of prejudgment interest on the compensatory damages award.  *See Vickery v. Evans*, 266 P.3d 390 (Colo. 2011).  So, the award of punitive damages here is limited to $5,468,010, plus any amount of prejudgment interest that is added to the compensatory damages award.[4]

The only two exceptions to the cap on exemplary damages—which would allow for an award of up to three times the actual damages awarded—are plainly inapplicable here.  Colo. Rev. Stat. § 13-21-102(3).  Under those exceptions, the Court may increase the award if Mr. Wayman established that Defendants have either (1) "continued the behavior or repeated the action which is the subject of the claim against the defendant in a willful and wanton manner…*during the pendency of the case*" or (2) "acted in a willful and wanton manner *during the pendency of the action* in a manner which has further aggravated the damages of the plaintiff."  *Id*. (emphasis added).

There is no evidence of either here.  First, Mr. Wayman never alleged—much less proved—that Defendants engaged in any misconduct concerning the CAEv2 during this litigation.  Indeed, it is undisputed that the CAEv2 was discontinued and

---

[4] Under Colorado law, prejudgment interest may not be added to an award of punitive damages.  *See Lira*, 832 P.2d at 246.

7

no longer being sold long before Mr. Wayman filed his lawsuit. And there was no evidence whatsoever that anything Defendants have done during the lawsuit has "aggravated" his tinnitus or alleged hearing injuries. *See Watson*, 2013 U.S. Dist. LEXIS 122595, at *17-18 (declining to increase punitive damages because there was no evidence that the Defendants continued to use the chemical at issue in their popcorn during the pendency of the case).

### III. Mr. Wayman may seek treble damages but not prejudgment interest on his CCPA claim.

Given the jury's finding in Mr. Wayman's favor on his CCPA claim—and its additional finding that Defendants engaged in "bad faith conduct"— Mr. Wayman may seek treble damages under the statute if the verdict stands. Thus, the treble damages award under the statute would be three times the reduced compensatory award, or $16,404,030.

Still, because treble damages are the equivalent of punitive damages under Colorado law, Mr. Wayman is not entitled to prejudgment interest on the treble damages award. *See Becker & Tenenbaum v. Eagle Rest. Co., Inc.*, 946 P.2d 600, 602-03 (Colo. Ct. App. 1997); *United States ex rel. JBlanco Enters. v. Abba Bonding, Inc.*, 2011 U.S. Dist. LEXIS 23702, at *4 (Dist. Colo. Feb. 22, 2011) (declining to award prejudgment interest on treble damages award under CCPA); *see also Spokas v. Am. Family Mut. Ins. Co.*, 2015 U.S. Dist. LEXIS 83573, at *9-12 (Dist. Colo. June 26, 2015) (declining to award prejudgment interest on award of

"two times the covered benefit" under insurance statute because award, like treble damages, was punitive in nature).

## IV. Under established Colorado law, Mr. Wayman may not recover both treble damages under the CCPA and punitive damages.

Finally, the Colorado Supreme Court has expressly held that a plaintiff may not recover both treble damages under a statute and punitive damages for the same conduct. *See Lexton-Ancira Real Estate Fund, 1972 v. Heller*, 826 P.2d 819, 822-23 (Colo. 1992). The court reasoned that "[g]enerally, a plaintiff may not recover both treble damages and punitive damages premised on the same facts because such damage awards serve similar purposes." *Id*. at 822. As the court noted, both treble damages and punitive damages are designed to punish the defendant. *See id.* Thus, permitting a plaintiff to recover both types of damages for the same misconduct results in "a double recovery from the same act." *Id*. at 823; *see also Watson*, 2013 U.S. Dist. LEXIS 122595, at *19-20 (holding that plaintiff could not recover both treble damages under the CCPA and punitive damages for claims arising under the same conduct by the defendant in selling a product without proper warnings).

Here, it is undisputed that all of Mr. Wayman's claims arose out of the same allegations of misconduct by the Defendants. So, if he is entitled to a treble damages award of $16,404,030, he cannot recover an additional punitive damages award of $5,468,010.

Dated: February 18, 2022

Respectfully submitted,

/s/ Mike Brock

Robert C. "Mike" Brock
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 389-5991
mike.brock@kirkland.com

*Counsel for Defendants 3M Company, 3M Occupational Safety LLC, Aearo Technologies LLC, Aearo Holding, LLC, Aearo Intermediate, LLC and Aearo LLC*

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)**

Pursuant to Local Rule 7.1(F), counsel for Defendants certify that this memorandum contains 2,143 words.

Dated: February 18, 2022

Respectfully submitted,

/s/ Robert C. Brock
Robert C. "Mike" Brock
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 389-5991
mike.brock@kirkland.com

*Counsel for Defendants 3M Company, 3M Occupational Safety LLC, Aearo Technologies LLC, Aearo Holding, LLC, Aearo Intermediate, LLC and Aearo LLC*

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY this 18th day of February 2022, a true and correct copy of the foregoing was electronically filed via the Court's CM/ECF system, which will automatically serve notice of this filing via e-mail to all registered counsel of record.

Dated: February 18, 2022

Respectfully submitted,

*/s/ Mike Brock*
Robert C. "Mike" Brock
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 389-5991
mike.brock@kirkland.com

*Counsel for Defendants 3M Company, 3M Occupational Safety LLC, Aearo Technologies LLC, Aearo Holding, LLC, Aearo Intermediate, LLC and Aearo LLC*