UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | Case No. 3:19md2885 |
| This Document Relates to: *Wayman*, 7:20-cv-149 | Judge M. Casey Rodgers Magistrate Judge Gary R. Jones |

# ORDER

Following a trial in January 2022, a jury awarded Plaintiff William Wayman $10,000,000 in noneconomic damages, $5,000,000 in physical impairment damages, and $40,000,000 in punitive damages against Defendant 3M. ECF No. 186. Under Colorado law, statutory caps and prejudgment interest apply to certain damages awards, and these issues must be decided prior to entry of final judgment. The parties, therefore, have submitted briefing on these issues and they are now ripe for resolution.

**I.    Compensatory Damages**

Under Colorado law, compensatory damages for a tort claim include physical impairment damages, noneconomic damages, and prejudgment interest. The Court will address each in turn.

First, under Colorado law, there is no limit on damages for physical impairment. *See* Colo. Rev. Stat. § 13-21-102.5(5) ("Nothing in this section shall be

construed to limit the recovery of compensatory damages for physical impairment or disfigurement."). Therefore, the jury's award of $5,000,000 for Wayman's physical impairment will not be reduced prior to entry of final judgment.

Colorado does have a statutory cap on noneconomic damages, however. *See* Colo. Rev. Stat. § 13-21-102.5(3)(a). This damages cap is $468,010, which can be increased to a maximum of $936,030 on a trial court's finding that an increase is justified by "clear and convincing evidence."[1] *See* ECF No. 190-1 (Official Certificate from the Colorado Secretary of State providing the updated statutory caps on noneconomic damages); *see also* Colo. Rev. Stat. § 13-21-102.5(3)(a); *see also Pisano v. Manning*, --- P.3d ---, 2022 WL 480895, at *4 (Colo. App. Feb. 17, 2022) (citing *Colwell v. Mentzer Invs., Inc.*, 973 P.2d 631, 639 (Colo. App. 1998)(explaining that "[a] 'justification' is an acceptable reason for doing something. Therefore, the court must find a reason, by clear and convincing evidence, to award damages above the statutory limit."). Although the statute is silent on what constitutes an adequate justification for increasing the cap, Colorado courts have

---

[1] The original noneconomic damages cap was $250,000, which could be increased to a maximum of $500,000. Colo. Rev. Stat. § 13-21-102.5(3)(a). However, the cap is subject to an inflation adjustment, which is determined by the accrual date of the plaintiff's claims and the inflation rate calculated by the Colorado Secretary of State. Colo. Rev. Stat. § 13-21-102.5(3)(c)(I)-(III). The inflation adjusted cap for all claims that "accrue on and after January 1, 2008 and before January 1, 2020" is "$468,010, which may be increased . . . to a maximum of $936,030." ECF No. 190-1 (Official Certificate of the Colorado Secretary of State). Since the parties agree that Wayman's claims accrued in 2019, *see* ECF No. 197, the noneconomic cap is $468,010, which can be increased to a maximum of $936,030 on the requisite finding by the Court.

CASE NO. 7:20cv149-MCR-GRJ

recognized that a valid justification could include "a finding that the Plaintiff's noneconomic injuries are unusually severe." *Id*. (citing *Schwab v. Martino*, Case No. 05-cv-01456, 2007 WL 4522714, at *4 (D. Colo. Dec. 17, 2007)). In determining whether adequate justification exists, the court has broad discretion to "consider any factors it deems relevant." *Id*.

In this case, the parties disagree on whether there is clear and convincing evidence to support an increase to the statutory cap. ECF No. 189 at 4; ECF No. 190 at 4. Defendants argue that Wayman's injuries are not unusually severe because he has continued to excel at his job, has not been subject to physical restrictions by doctors, and is able to care for himself and his family. ECF No. 189 at 4–5 (citing *Pisano*, 2022 WL 480895 at *5). Wayman argues that the clear and convincing trial evidence shows that his injuries are unusually severe. ECF No. 190 at 3. The Court agrees with Wayman.

As noted, Colorado law draws a clear distinction between physical impairment damages and noneconomic damages. *See* Colo. Rev. Stat. §§ 13-21-102.5(3), 13-21-102.5(5) (capping noneconomic damages and explicitly excluding physical impairment damages). Noneconomic damages are defined as "nonpecuniary harm . . . including pain and suffering, inconvenience, emotional distress, and impairment of the quality of life." Colo. Rev. Stat. § 13-21-102.5(2)(b). In making their argument, Defendants focus solely on Wayman's physical abilities,

overlooking evidence of the immense impact that Wayman's hearing injuries have on his mental state and quality of life. More specifically, the trial record reflects that Wayman has permanent hearing damage that affects his ability to hear at high frequencies, Trial Tr. 1/20/2022 at 231, 233, and permanent "severe to catastrophic tinnitus" that cannot be "masked effectively," *id*. at 240–41, 243, 246, both of which affect his ability to understand speech. *Id*. at 32, 35–37, 234. Due to these injuries Wayman has lost confidence in his ability to communicate with others, he feels unsafe outside of his home, and he has lost contact with his closest friends. Trial Tr. 1/19/2022 at 120, 253. Even within his home, Wayman's inability to understand speech has affected his bond with his wife and children who are forced to repeat themselves several times during meaningful interactions. *Id*. at 130–131. Additionally, regarding Wayman's tinnitus, which is constant, the sound resembles a high pitch ringing, *see id*. at 92, that reminds him of an incident involving the death of his close friend and fellow Army ranger who died in Wayman's arms following a surprise mortar attack in Iraq. *Id*. at 106–107, 126. This constant ringing "infuriates" Wayman, causing him to lose focus, lose sleep, and question his continued sanity. *Id*. at 104–105, 131, 134; *see* D-WAYMAN-1228 (medical record created during Wayman's military service that describes how Wayman's tinnitus affects his ability to sleep); Trial Tr. 1/20/22 at 244–45 (Dr. Lustig explaining that Wayman reported that his tinnitus "interferes with his concentration," causes him "significant difficulty

sleeping," and "causes him to become depressed and anxious"). Wayman's impact testimony was compelling and provides clear and convincing evidence that Wayman has suffered and will continue to suffer "unusually severe" emotional distress and loss of quality of life due to his hearing-related injuries. *See Pisano*, 2022 WL 480895 at *5; *see also* Colo. Rev. Stat. § 13-21-102.5(2)(b). Therefore, the Court will increase the statutory cap to $936,030.

Wayman also argues that the noneconomic damages cap should be multiplied by the number of Defendants, relying on *General Electric Company v. Niemet*. *See* ECF No. 190 at 2 (citing *Gen. Elec. Corp. v. Niemet*, 866 P.2d 1361 (Colo. 1994)). In *Niemet*, the Colorado Supreme Court explained that the cap on noneconomic damages "does not act as a cap on the total amount a plaintiff may recover from several defendants." 866 P.2d at 1368. Instead, "a trial court should apportion pro rata liability among the defendants and plaintiff before it applies the" statutory cap for noneconomic damages. *Id*. Thus, when a jury apportions fault to more than one party, the trial court should apportion liability based on the jury's verdict and then apply the statutory cap to the total amount a particular defendant is liable for. *See id.*

Wayman's reliance on *Niemet* is misplaced because the jury in his case only found fault by one party, the Defendants, who were treated collectively as "3M" by the Court and the parties throughout the trial. *See* ECF No. 185. Under *Niemet*, the noneconomic damages cap applies after apportioning liability consistent with the

jury's verdict. 866 P.2d at 1368. Here, the Defendants - collectively as "3M" - were found to be 100% at fault for $10,000,000 in noneconomic damages., ECF No. 185. Accordingly, no defendant multiplier applies.

Last, Wayman seeks a prejudgment interest award. In a diversity case such as this, state substantive law governs an award of prejudgment interest. *SEB S.A. v. Sunbeam Corp.*, 476 F.3d 1317, 1320 (11th Cir. 2007) (quoting *Royster Co. Union Carbide Corp.*, 737 F.2d 941, 948 (11th Cir. 1984)). Under Colorado law, "[p]rejudgment interest in a personal injury case is an element of compensatory damages, 'awarded to compensate the plaintiff for the time value of the award eventually obtained against the tortfeasor.'" *Old Republic Ins. Co. v. Ross*, 180 P.3d 427, 437 (Colo. 2008) (quoting *Allstate Ins. Co. v. Starke*, 797 P.2d 14, 18–19 (Colo. 1990)); *See* Colo. Rev. Stat. § 13-21-101(1). A prejudgment interest award must be based on the amount of final judgment once the statutory cap has been applied, *see Morris v. Goodwin*, 185 P.3d 777, 780 (Colo. 2008) ("[W]e conclude that the statute must be interpreted to provide interest on the amount awarded by final judgment, regardless of the jury's determination."). Colorado law does not allow for prejudgment interest on exemplary damages, whether punitive damages, *see Ballow v. PHICO Ins. Co.*, 878 P.2d 672, 683 (Colo. 1994), or treble damages under the Colorado Consumer Protection Act (CCPA). *See Becker & Tenenbaum v. Eagle Restaurant Co., Inc.*, 946 P.2d 600, 602 (Colo. App. 1997). Finally, prejudgment

interest begins "from the date the action accrued." Colo. Rev. Stat. § 13-21-101, which is "on the date both the injury and its cause are known or should have been known by the exercise of reasonable diligence." Colo Rev. Stat. § 13-80-108(1). Thus, to calculate prejudgment interest there must be a total amount in compensatory damages, an accrual date, an interest rate, and a final judgment date. Here, the final compensatory damages amount is $5,936,030, and the final judgment date is the date of this Order. Regarding the accrual date and applicable interest rate, the parties agree that Wayman's claims accrued on October 30, 2019, and that the proper interest rate is eight percent compounded annually. *See* ECF No. 197. Accordingly, Wayman is entitled to $1,296,391.46 in prejudgment interest and thus his total award, including compensatory damages and prejudgment interest is $7,232,421.46.

## II.     Exemplary Damages

Exemplary damages include punitive damages and treble damages under the CCPA. The jury awarded Wayman 40,000,000 in punitive damages and found by clear and convincing evidence that Defendants' violation of the CCPA was in bad faith, *see* ECF No. 186, supporting an award of treble damages under the CCPA. *See* Colo. Rev. Stat. § 6-1-113(2)(a)(III).  However, because punitive damages and treble damages serve the same purpose, Wayman cannot receive both. *See Lexton-Ancira Real Estate Fund, 1972 v. Heller*, 826 P.2d 819, 822 (Colo. 1992) (en banc)

(citations omitted). Wayman has elected to receive the higher of the two amounts after the statutory caps have been applied. ECF No. 190 at 6.

In general, punitive damages must not exceed actual damages under Colorado law. Colo. Rev. Stat. § 13-21-102(1)(a). However, the punitive damages cap can be increased to "three times the amount of actual damages, if it is shown that:

> (a) The defendant has continued the behavior or repeated the action which is the subject of the claim against the defendant in a willful and wanton manner, either against the plaintiff or another person or persons, *during the pendency of the case*; or
>
> (b) The defendant has acted in a willful and wanton manner *during the pendency of the action* in a manner which has further aggravated the damages of the plaintiff when the defendant knew or should have known such action would produce aggravation."

Colo. Rev. Stat. § 13-21-102(3)(a)-(b) (emphasis added). Neither provision applies.

There is no evidence that Defendants repeated their actions or caused further injury to other individuals "during the pendency of [Wayman's] case." *See* Colo. Rev. Stat. § 13-21-102(3)(a). In fact, Defendants discontinued distribution of the CAEv2 well before Wayman filed his case and well before Wayman was even aware of his claims against Defendants in 2019. *See* ECF No. 197. Furthermore, there is no record evidence that Defendants "aggravated" Wayman's damages "during the pendency of the action." *See* Colo. Rev. Stat. § 13-21-102(3)(b). Therefore, the

CASE NO. 7:20cv149-MCR-GRJ

statutory cap on punitive damages cannot be increased, and Wayman's punitive damages cannot exceed compensatory damages. *See* Colo. Rev. Stat. § 13-21-102(1)(a). Thus, absent the jury's finding of bad faith on the CCPA claim, the punitive damages award would have to be reduced from $40,000,000 to $7,232,421.46, resulting in a $14,464,842.92 total potential judgment.

Under the CCPA, a plaintiff may recover "three times the amount of actual damages sustained, if it is established by clear and convincing evidence that" the defendant "engaged in bad faith conduct." Colo. Rev. Stat. § 6-1-113. The jury in Wayman's case made this finding, and thus he is entitled to treble damages. *See* Jury's Verdict, ECF No. 186. The total amount of treble damages is $21,697,264.38, which, as noted, Wayman has elected over punitive damages.

Accordingly, the Clerk is directed to enter final judgment for Wayman in the total amount of $21,697,264.38, which is three times the amount of actual damages Wayman sustained ($5,000,000 in physical impairment damages, $936,030 in noneconomic damages, and $1,296,391.46 in prejudgment interest).

**DONE AND ORDERED** this 24th day of May 2022.

*M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**